Good morning, Your Honors. May it please the Court. Sosin Nalbandian, on behalf of Petitioner Maya Gustafanian. Your Honors, the issue in this case is the BIA's finding and whether the BIA implicitly found Petitioner credible by not addressing the IJ's adverse credibility finding. The BIA's ruling states we find no clear error in the immigration judge's finding that a respondent failed to establish past persecution and so forth, or that it is more likely to be persecuted if he returns to Iran. Therefore, we would argue that Krotova v. Gonzalez governs in this case, Your Honor, in the sense that if the IJ made an explicit adverse credibility finding and the BIA was silent on that issue but addressed it on eligibility grounds, those are the issues that – Well, that isn't all that they said, however. I mean, if you go on down and read what they said, they don't stop right there. They cite the matter of Bourbono – Bourbono – I'm an Iowan, so I don't know how to spell that – matter of Bourbono right in there. They put it right in. They further say they cite 8 CFR 1003.1D3I and the matter of A.S., and those refer to the findings of fact of the IJ. Your Honor, that is correct, expressed except for the fact that I believe Abebe is the case that says if the IJ – if the BIA expressly states that it affirms on their matter of Bourbono – in this case, they're citing it in a string cite. I'm not sure if they're expressly citing to Bourbono, but even if that is the case, Your Honors, we would argue that the inconsistency that the IJ cited is a single inconsistency. We would argue, first of all, that it is – the individual testified, as the IJ admitted vividly, about dates, events, and so forth. It is a relatively minor inconsistency, albeit it is with regard to the harm, but he testified that he was harmed. The IJ asked – the IJ was correct in asking for an However, when the individual, 71-year-old man, responded that he was mistaken, under Soto Alarte, the IJ should have continued and asked – basically explained why he did not accept his simple explanation that he was mistaken. But just a minute. What he said was, I was mistaken, and then upon further, as I understood it, review, he said, and I don't know which one happened. Well, Your Honor, that's what the testimony seems to suggest. He said he was mistaken, but on further thought, he didn't know whether he was really hit in the head or whether he was hit in the stomach. I mean, did you read the testimony directly? Yes, I did, Your Honor. What does it say? Well, I do not recall seeing that in there. However, Your Honor, this man, he's a 71-year-old man. It is possible that he forgot how he was beaten. Your Honor, in light of – Is there any – is there any conflict in the testimony that he was knocked unconscious and how he was knocked unconscious? Do you think that goes to the heart of the claim? Your Honor, well, there is no conflict in terms of – he had to – I mean, the bottom line is he was knocked unconscious. How he was knocked unconscious doesn't – is that – does that go to the heart of his claim? That's our argument. Is that the only inconsistency? That is the only inconsistency that the judge cited and the fact that – Let me ask you a question, because my colleague's question is a very good one. Is it inconsistent to say I was hit on the head and be unconscious or I was hit in the stomach and can't breathe? Your Honor, if that is the – I mean, that's what the – that's what they focused in on. One says hit on the head and unconscious. Another says hit in the stomach and can't breathe. Now, what we're really saying is, is that inconsistent? Well – I mean, one doesn't say unconscious. One does. One says can't breathe. One doesn't. Well, there's two issues there, Your Honor. First of all, he says that he was punched in the stomach in his statement. He does not say that he was not hit on the head. There are – there is case law in this circuit that information could have been left out of the written statement. So he could have been punched in the stomach. It was a beating that occurred at the house by the posters. He could have been punched in the stomach and later hit on the head and knocked unconscious. That was never elaborated upon in court. Both of them could have happened. And the second issue is, even if – he never stated that that was the only harm that occurred. He could have had – suffered both harms at the same beating. But even if that's the case, our argument is, yes, even if – He did not, Your Honor. However, our position is that in the statement, he states that he was punched in the stomach. And in court, when he stated that he was hit on the head and knocked unconscious, it could have been – followed subsequent incidents of harm during the same beating, Your Honor. And also, there is the issue of whether or not the I.J. should have elaborated and asked why he was mistaken or – basically, under SOTA Olarte, it is not clear why this explanation was unsatisfactory to the judge. He just said it's unsatisfactory. Well, the worry that I have – and I guess I'm testing you a little bit, even as the devil's advocate – but the worry I have is that when he was asked, well, you got an inconsistency here, and so what are you really saying? And he says, well, I made a mistake. And then he says, and I don't know which one was the mistake. Yes. So what does the judge do about that? I mean, you're saying he should have asked more questions. But when the guy says right there in his testimony, I made a mistake, but I don't remember which one was the mistake. Well, Your Honor, it could be that – I understand the point's concern. But it could be that this gentleman is really – he could have made up some other reason. He's being honest with the court. He does not recall what occurred. A couple of times he stated during the testimony that he did have memory issues. He's a 71-year-old man from Iran who's gone through a lot of hardship. And, Your Honor, even in light of that inconsistency, the court knows very well what is happening in Iran today. The country reports in this case and the religious freedom report essentially address Christians in Iran, how they are being persecuted. This gentleman – But just a minute. If we read the country reports, it says, although the reports describe circumstances in which Christians may suffer, the evidence does not support a finding that the mere membership would result in the persecution.  That's what the report said. That is correct. Okay. Now, that doesn't say just being a Christian is going to be a problem. It says you can be a Christian, but when you go out and try to convert other Muslims to be Christians, then you've got a problem. That is correct, Your Honor. But in this case, our position is that he testified consistently throughout the case except for that one – I mean, to me, it doesn't seem like even an inconsistency. The judge asks, were you actually, in fact, hit in the stomach or were you hit in the face? Answer, I don't remember well, but I remember I was hit in the face. All right, can you tell me why your declaration says you were hit in the stomach? I said incorrectly. Then they go into who typed it. All right, so were you unable to breathe? And then he says, when I got hit, I fell, and when I came to, they took me away. To me, that says he was unconscious. He says, well, were your lungs locked up so you could not breathe? And he says, when he hit me unexpectedly, at that moment, I lost consciousness. In the face, to tell the truth, at that moment, I couldn't – whether it was my head or – he's obviously not remembering that fact. That is our position, Your Honor. It is possible that someone does not remember a certain – especially something that is traumatic as that. The most important fact is that he was knocked unconscious, right? That's correct, Your Honor. He was knocked unconscious. Now, who are these people? They're described inconsistently throughout the transcriptions. Is it pastors? Pastors, P-A-S-T-A-R-S, I guess would be the English spelling. And who are they? They're the religious police, Islamic police in Iran, part of the government that basically ensures that the law is being adhered by the Islamic law. And do they still exist in Iran? Of course, they still exist. And as we can see on TV, it's still as bad the situation. Why don't you just reserve a minute of your time? Because I have a lot of other issues with the BIA's opinion. Thank you, Your Honor. Thank you. Thank you, Your Honor. Morning, again. Morning, again. All right. So I remember you from the prior argument. And I have to ask you some questions about this opinion, because I've seen a lot of these. And part of me is questioning whether this BIA review was actually of Mr. Stepanian's, I.J.'s opinion. And let me point out a couple of things that are strange about it. Okay. The key reason that the I.J. denied the claims for asylum, withholding, etc., was because of an adverse credibility determination, right? Okay. That's not mentioned in this decision. But it's the easiest way to go, to just say, there is no clear error in the adverse credibility determination, therefore we affirm the I.J. So that's an oddity. Then, the clear error standard is a different standard of review than the matter of Robano's standard. In fact, they conflict. Because one of them is deference to the findings, the factual findings of the I.J. And the other is an evaluation of the findings. So it's inconsistent to say no clear error in finding that the respondent failed to establish and then to also cite all these cases that say we give deference, we're deferring and we're adopting the I.J.'s opinion. Just absolutely inconsistent standards of review in that paragraph. Then, they've got the wrong country of removal and then they cite to the Uganda country reports. So I don't know what we're supposed to do with this BIA decision. I mean, we have to review it because it has more than just an adoption of the I.J. But I don't, I mean, it is so inconsistent and it can't just be attributed to a typo because it's erroneous both with Armenia and Uganda. We're talking about Iran. So how do you explain this? Well, first, I would note that Petitioner has conceded in his brief that the reference to Uganda is simply a typographical error. Petitioner's brief, in fact, cites a link to the appropriate and the relevant country. I don't think there's a concession, but I do agree that he's gotten to the right country report. What about removing, what about the removal to Armenia? Again, error. Can we just explain, I mean, that's all we're reviewing for though. I'm wondering, is, okay, what about the inconsistent standards of review? And what's, how are we supposed to with this Board decision? But they are not such that we cannot view the record as a whole. No, we're not. No, no, no, no, no. You understand we have clear authority in the 9th Circuit standards of review. That, this is my pal from Idaho, always focuses on the standards of review. And if it's, if the BIA is reviewing an adverse credibility determination for clear error, that's one thing. If the BIA adopts the IJ's opinion as its own, then we review the IJ's opinion. That's another way of review. This doesn't tell us what we're supposed to be reviewing. I think insofar as the Board decision clearly does indicate that they are adopting the immigration judge's decision. In part. In part. Read as a whole. You know, perhaps that last issue. It's clear that this Board decision is speaking to the second immigration judge decision that we have. This is a lengthy record. We have the first decision from the immigration judge. Which was reversed and remanded. Exactly. We have that action by the Board. And the second one, I mean, if you get to the merits, it turns entirely on one inconsistency about where the BIA decision is. Only because they're adopting the immigration judge's decision. I think that's how the two must be read together. Then why are they reviewing for clear error? It could be a typographical error. Another typo? It is. A typo to suggest we're reviewing for clear error? That would be a big typo. It would, Your Honor. Counsel, this is Judge Rawlinson. Yes, Judge Rawlinson. What's our standard of review for reviewing the BIA decision, though? We review that decision for substantial evidence. Because in this case, what is at issue is an adverse credibility finding. That's all we have. No, no. That's if we're reviewing the IJ decision, we have an adverse credibility finding. If we look at the four corners of the BIA decision, which we're supposed to do when it goes beyond the adoption of the IJ, there's no adverse credibility finding. But, Counsel, if the BIA decision adopts the IJ decision and then adds additional information, don't we review both of them and the entire record to see whether or not there's substantial evidence? Yes. Clearly. I apologize if I was not understanding the question properly. Yes, in this case, it's the government's position that we are reviewing both decisions, the immigration judge's decision insofar as it adopts the immigration judge's decision. We have the two. But what case can you cite in support of that being the standard of review under these circumstances? Unfortunately, one is not coming to mind, Your Honor. But that's the analysis. That's the most important thing you should be arguing to us. Which decision do we review and what's the standard of review? Believe me, my trusty law clerks can look that up in a second. Certainly. And that's something that I have that you as the advocate need to be aware of. Yes, Your Honor. I apologize. I think the government approaches this case from the perspective that we have a very clear, thorough adverse credibility finding. Let me ask you something. Looking at the bigger picture, the government, our government, thinks it's appropriate to deport a 71-year-old Armenian Christian to Iran today? If we can take that adverse credibility finding for the moment, setting aside, you know, what exactly the board has said in its decision, which admittedly has a couple of typographical errors that are a problem, what we have here is an individual who came forward with a written application, which has not been amended, which has not been withdrawn, testified completely and consistently with that application twice. What's the second one? His two hearings before the We can't even consider that now. The I.J. did a new hearing. Yes. But Petitioner's testimony in those two hearings is relevant insofar as it is consistently different from his written representation. It's not relevant. It's not even part of this, what we're supposed to be considering. The I.J. didn't rely on it at all. Now, surely you're familiar with the authority in our circuit that we only look to what, depending which decision we're reviewing, but it was the BIA, what was before the BIA, or the I.J., what was before the I.J. Neither one of those bodies considered the prior hearing transcript in coming to their decision. No. And so how can you be arguing to me now? Neither one of them did. Insofar as Petitioner, during his second hearing, after the board's remand, did not withdraw and did not amend his written statement, set forth in his own application. It's inconsistent, obviously, because the bottom line was that he was beaten unconscious. Where he was beaten, how he became unconscious, is not really the most important factor. He was beaten unconscious by the religious police and taken to jail, where he was beaten further and detained. But the first step in that analysis is understanding exactly what happened in Petitioner's allegations. And the problem that the immigration judge had with this case was that Petitioner repeatedly set off his testimony by saying, I have memory problems, I have difficulty recalling things, and then proceeded to recall in vivid detail, albeit in two different ways. But the I.J. didn't even say that. The I.J. said he found the inconsistency in whether he was I would slightly disagree, Your Honor, insofar as the immigration judge first found that it was and she brought this to Petitioner's attention. She did. I'm sorry, you're right. You're right. She did do it. She did. That was a good thing that she did. Yes, on several occasions. And I believe the immigration judge's take on this case is that Petitioner could not. Oh, here's the other, I'm sorry, I missed one of the problems with the I.J.'s decision. Now I'm looking back at the I.J.'s. The I.J. would not allow the Respondent's documents to be admitted, but the BIA says, starts faulting him for his lack of credible corroborating documents. But the I.J. excluded that evidence. So how can the BIA now use that against the Respondent in its reasoning? I don't believe the BIA is faulting the documentary evidence that's in this record. We find the Respondent's testimony at the two hearings, his statements in his I-589, his lack of credible corroborating documents. Yet on page 37 of the I.J.'s opinion, he says the documents, which include a business license, a letter from the Ministry of Justice, from Iran, a letter of employment, a letter from the doctor, everything that corroborates his story will not be considered. In fact, the Court emphasizes that the fact that the Court is not admitting these documents or not considering these documents is not an adverse factor in any credibility determination. And then the BIA goes and uses his lack of credible corroborating documents to support the Immigration Judge's finding. Those are distinct. The Immigration Judge has said, I'm not considering these documents, so they are not a part of the record. And the Board has, on the other hand, stated that in the absence of other, perhaps different corroborating documents. What other documents would be relevant? That's not a question that can be answered based on this record. You're right, because this BIA decision doesn't make any sense. What we have is Petitioner, in his second hearing for the Immigration Judge, not offering any other explanations or any other documentation that might allow the agency to view those documents as potentially independent proof in support of his claim. Instead, Petitioner relies on his same written statement and provides inconsistent testimony. But again — You know what? That sounds pretty good, but that's not in either of the BIA or the IJ opinions. I believe it is, Your Honor. I think the first thing to take from the Immigration Judge's decision is that the fundamental issue is Petitioner's claim that he suffers memory loss and then his vivid testimony with respect to his experience in New Orleans. Who's the Board member who signed this? This was a one-judge BIA. I believe it's Hess. H-E-S-S. Is this a summary affirmance, since there's only one judge? No, this is not. Okay. Because if it were, we would just be reviewing the IJ's decision to make it easier. Correct. This is certainly not the clearest board language, but I believe it's a one-judge  taking the two together, as we would regardless, because we have here the board accepting the Immigration Judge's adverse credibility finding. They don't say that. They don't say they accept the IJ's adverse credibility finding. Can you point me to where it says that? I believe that second paragraph, read as a whole and put against the Immigration Judge's decision. You have many parts. I do see that my time has run. I apologize that I've run over. May I answer? You can finish. Thank you. Accepting how the Immigration Judge came to her adverse credibility finding. It is not necessarily the substance of Petitioner's testimony. It's the fact that Petitioner blames memory loss and then recalled in vivid detail his experiences. And again, with respect to the documents, it isn't that they were problematic. It's that they were excluded. And the board here has said that in itself is a problem. If you have adverse credibility based on testimony that is not rehabilitated by independent corroborative documentation, that's the analysis that the board has conducted here. Quite simply put, the record does not compel reversal of the adverse credibility finding reached by the agency and the petition for review should be denied. Are there any other questions? I don't think there is. Well, my worry is what standard of review I'm supposed to review the credibility finding. And I guess you've now suggested another. If I go under matter of verbena, I don't have to do anything with it. If I go for clear error, I do have to look and see what they're finding. There was no clear error to do. And now I guess you're suggesting quite a second, which or a third, which is I take what the IJ did and then I add to it what the BIA did. Well, perhaps in the reverse, if that's if that fits better within the analysis of this court. But I apologize that I've not prepared a more concise answer to that point. I think taking the record as a whole and the two decisions. You don't need to apologize. I mean, I think this BIA decision is problematic. Not your fault. You're doing the best you can to defend it. There are many decisions and typos do occur. And I think it's a balancing of whether the decisions can still be read together. Okay. Thank you. Thank you very much, Your Honor. Thank you, Your Honor. Thank you. Sussan Melbahim, again, arguing on behalf of Petitioner. Briefly, Your Honor, I did not have a chance to address the issue of relief. Now, upon the government's argument, as the court stated, looking at the big picture, the government wants us to read as a whole the BIA's decision. That would be fine if it's a clear, concise, well-written decision. We would ask at the very least. Counsel, this is Judge Rollins with a question. You've never questioned whether or not this BIA decision applies to your client, have you? In fact, Your Honor, I was not the one who wrote the brief. But yes, on page 15 of the brief, it says it should be noted that Petitioner is from Iran, not Uganda. And it doesn't make a concession. In fact, it says, assuming arguendo, that they were reading the Iran report. And then it goes on to speak about that. But that was only regarding the country report. You didn't make a global argument that the wrong Petitioner was addressed in this BIA decision, did you? Well, the attorney made an argument that as a whole, the BIA's decision is not clear. And I'm sure this court, Your Honor, wants to have a clear explanation from the BIA, whether they found him credible, whether they ruled on past and future persecution alone. Because, Your Honor... I understand that. But that was not my question. My question was, was there an argument in the opening brief that this BIA decision addressed a Petitioner other than this Petitioner? No, Your Honor. There was not. Your Honors, I would argue that, if I may take a few more seconds, basically, with regard to... A remand would be appropriate to have the BIA, at the very least, say whether they found him credible or not credible. Because if they found him credible, I think that's a whole new issue. And I believe this court would find, given the conditions in Iran and the harm he suffered, that substantial evidence would support eligibility for asylum relief. If, on the other hand, the BIA did affirm the IJ, they have to say on what? For bono or clear error. And if they did affirm the IJ, since it's only one inconsistency, albeit we would argue a minor one at the very... We would argue that the BIA should explain itself in a better manner. I've seen non-published decisions in this court. I don't have the cites with me, of course. But where the court has consistently remanded, where they've cited to the wrong country report, the BIA has cited to the wrong country reports. So we would argue, at the very least, for a remand for clarification. And we would also argue that if this court finds that the inconsistency is minor or that there is an implicit credibility finding, then, in that case, find... I guess the last problem I have that I didn't raise with the government is that when the BIA ordinarily reviews under Burbano, it's not allowed to consider anything beyond what the IJ considered. And here, the BIA considered the transcripts from both hearings, and the IJ did not. So that means it's going outside the IJ's... That's correct. The IJ explicitly stated he's doing the de novo hearing, and he expressly also stated that he's not finding the documents against the respondent, what the previous... I mean, Petitioner, what the previous IJ had done. It was reversed by the board. Your Honors, I believe this Court, in terms of the big picture, wants... I think... Especially with the seven... I think you've used up your time. Okay. That's fine. Okay. Thank you. Thank you, Your Honors. Thank you. Okay. Dependent v. Holder, if he's submitted...
judges: Wardlaw, Rawlinson, Smith N. R.